UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

ABRAHAM JACOB WARNER, individually,  :     Case No. <u>1:18-CV-406</u>[GLS/ATB]
and on behalf of all others similarly situated,

                                        :     **CLASS ACTION**

                     Plaintiff,           **<u>COMPLAINT</u>**

                                          :

           -vs.-

                                          :

STARKIST CO.,                                **JURY TRIAL DEMANDED**

                                          :

               Defendant.

---------------------------------------------------------x

         Plaintiff Abraham Jacob Warner ("Plaintiff"), individually, and on behalf of all other similarly situated persons, through his undersigned attorneys, alleges the following:

## PRELIMINARY STATEMENT

        1.      Defendant StarKist Co. ("Defendant" or "StarKist") is one of the largest producers of seafood products in the United States.  Indeed, StarKist claims to make "America's favorite tuna."  However, StarKist's products contain a brazen misrepresentation that causes consumers to falsely believe that StarKist products are healthier than products made by other food manufacturers.

        2.      Specifically, StarKist prominently displays the American Heart Association "Heart-Check Mark" on products.

        3.      Reasonable consumers see the Heart-Check Mark and mistakenly believe that a product with a Heart-Check Mark is healthier than a product without a Heart-Check Mark.

        4.      In fact, a food manufacturer must pay the American Heart Association ("AHA") in order to place the Heart-Check Mark on its products.  The Heart-Check Mark is a paid endorsement.

        5.      However, in violation of state and federal law, StarKist fails to disclose on

{00291630 }

product labels that the Heart-Check Mark is a paid endorsement.

## PARTIES

6.      Plaintiff Abraham Jacob Warner is a resident of Walker Valley, New York.

7.      Upon information and belief, Defendant StarKist Co. is a company incorporated under the laws of the state of Delaware, with a principal place of business in Pittsburgh, Pennsylvania.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) a member of the class of plaintiffs is a citizen of a State different from a defendant; and (3) the number of members of all proposed plaintiff classes in the aggregate is greater than 100.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated.

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

10.      Heart disease is the leading cause of death in the United States.

11.      Consumers have become increasingly health-conscious, and look for foods they believe will reduce their likelihood of developing heart disease.

12.      A recent AARP survey of consumers age 40 and above found that 88% of consumers are likely to eat healthier if they knew it would lower the risks of heart disease. *See* https://www.prnewswire.com/news-releases/aarp-releases-consumer-insights-survey-on-nutrition-and-brain-health-300590689.html.

13.     Another study prepared for a symposium by the Federal Reserve Bank of Kansas City shows that 22% of food shoppers in the United States specifically look for heart healthy claims on food labels when they go grocery shopping.  *See* https://www.kansascityfed.org/~/media/files/publicat/rscp/2015/mccluskey-paper.pdf?la=en.

14.     StarKist takes advantage of health-conscious consumers who are looking for heart-healthy foods by manipulating them in to believing that StarKist's products are more heart-healthy than products sold by other food manufacturers.

**<u>StarKist's Unlawful Conduct</u>**

15.     StarKist is a food manufacturer that sells seafood products, including packaged and canned tuna and salmon.

16.     Certain specific StarKist products have a label that contains the Heart-Check Mark.

17.     StarKist paid the AHA for the right to use the Heart-Check Mark on its product labels.

18.     Every year, StarKist must pay an annual fee to renew its right to use the Heart-Check Mark on its product labels.

19.     StarKist labels do not disclose that StarKist paid for the right to use the Heart-Check Mark.

20.     StarKist labels do not disclose that the Heart-Check Mark is a paid endorsement.

21.     The AHA, in fact, sells the right to use the Heart-Check Mark.

22.     The AHA makes a significant profit off the sale of rights to use the Heart-Check Mark.

23.    The AHA can do this because the presence of the Heart-Check Mark on a product increases sales and allows companies such as StarKist to sell their Heart-Check Mark products at a price premium.

24.    Food manufacturers, including StarKist, eagerly pay the AHA for its endorsement because they know that the Heart-Check Mark will increase their sales and their profits.

25.    Indeed, promotional materials provided by the American Heart Association to companies interested in participating in the Heart-Check Mark program confirm that controlled studies show that the mark increases sales by influencing consumers that an "independent" group has certified the healthiness and heart healthiness of products bearing the mark.

26.    According to these materials: "Shoppers want clear, simple purchase guidance from a trusted source. The American Heart Association heart-check mark *increases product sales* because seeing the mark on a package assures shoppers they are making a smart choice" (emphasis added).

27.    Those materials also emphasize the benefits to a food company of placing the mark on their product and how such a mark will be perceived and used by consumers.

28.    According to marketing materials: "More than half of shoppers prefer food ratings from a third-party health organization, such as the American Heart Association's heart-check mark. The rise of new food icons has created confusion, but ultimately consumers rely on the independent symbol they have come to know and trust."

29.    The AHA website states that: "When the Heart-Check mark is on the package, shoppers pay attention. Since 1995, the Heart-Check mark has guided shoppers to healthier choices, making it a leader with consumers and the food industry. Consumer research shows that shoppers are paying more attention to healthy eating, and their #1 health concern is heart health.

The Heart-Check mark makes smart shopping easier and reassures shoppers they have made a choice that can fit into a heart-healthy diet. In fact, the American Heart Association is the authority most trusted by consumers to decide if a product may display a nutrition message or mark."

30.     Recognizing that it can manipulate consumers through the use of the Heart-Check Mark, StarKist has placed the Heart-Check Mark on its products, including the following:

        a.     StarKist Alaskan Pink Salmon;

        b.     StarKist Alaskan Pink Salmon Reduced Sodium;

        c.     StarKist Boneless Skinless Pink Salmon;

        d.     StarKist Chunk Light Tuna in Water;

        e.     StarKist Chunk White Albacore Tuna in Water;

        f.     StarKist Low Sodium Solid White Albacore Tuna in Water;

        g.     StarKist Selects Chunk Light Tuna in Water;

        h.     StarKist Selects Low Sodium Chunk Light Yellowfin Tuna in Water;

        i.     StarKist Selects Solid Light Yellowfin Tuna in Water;

        j.     StarKist Selects Solid White Albacore Tuna in Water;

        k.     StarKist Selects Very Low Sodium Chunk White Albacore Tuna in Water;

        l.     StarKist Solid Light Tuna in Water; and

        m.     StarKist Solid White Albacore Tuna in Water;

31.     All of these products sell at a price premium as a direct result of StarKist's deceptive use of the Heart-Check Mark.

32.     None of these products discloses that the valuable Heart-Check Mark is a paid endorsement.

33.     However, both federal and state law require such a disclosure.

34.     21 C.F.R. § 1.21 requires food products to reveal all material facts.

35.     21 U.S.C. §§ 343(a) and (d) preclude misleading food products and containers.

36.     21 C.F.R. § 101.14(a)(1) defines "health claims:"

Health claim means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, ***including "third party" references, written statements (e.g., a brand name including a term such as "heart"), symbols (e.g., a heart symbol)***, or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition. (Emphasis added).

37.     In furtherance of the goal of these laws, in 1993, the FDA issued the *Final Rule: Food Labeling; General Requirements for Health Claims for Food*, 58 Fed. Reg. 2478, 2485 (Jan. 6, 1993), which provides:

[T]he agency recognizes that endorsements made for compensation by private organizations or individuals may be misleading to consumers. The agency is advising that when such endorsements are made, ***a statement should be included in close proximity to the claim, informing consumers that the organization or individual was compensated for the endorsement. Failure to divulge this information on a label that bears a paid endorsement would cause the product to be misbranded*** under sections 403(a) and 201(n) of the act for failure to reveal a fact that is material. (Emphasis added).

38.     That final rule explicitly discusses endorsements by the AHA:

[A] third party endorsement would constitute an implied health claim if the endorsement references a particular food or substance, and the name of the endorsing organization references a particular disease (***e.g., American Heart Association***). In such an endorsement, both basic elements would be present. As a result, a link would be created between the food/substance and the specific disease that could be reasonably understood by consumers as asserting that the product is useful in reducing the risk of developing that disease. 58 Fed. Reg. at 2485 (emphasis added).

39.     Under federal law and New York State law, StarKist products with the Heart-Check Mark are misbranded and deceptive.

40.     Dealing in misbranded food is a criminal act.  In fact, it is a strict liability crime. *See* 21 U.S.C. § 333(a).

41.     StarKist's products that contain the Heart-Check Mark also violate New York State law.

42.     All federal food labeling regulations are incorporated into New York law.  *See* 1 N.Y.C.R.R. § 259.1.

43.     N.Y. Agric. & Mkts. Law § 199-a(1) provides that:

No person or persons, firm, association or corporation shall within this state manufacture, compound, brew, distill, produce, process, pack, transport, possess, sell, offer or expose for sale, or serve in any hotel, restaurant, eating house or other place of public entertainment any article of food which is adulterated or misbranded within the meaning of this article.

44.     N.Y. Agric. & Mkts. Law § 201(1) provides that a food shall be deemed to be misbranded "If its labeling is false or misleading in any particular."

45.     N.Y. Agric. & Mkts. Law § 201(4) provides that a food shall be deemed to be misbranded "If its container is so made, formed, colored or filled as to be misleading."

46.     N.Y. Agric. & Mkts. Law § 201(6) provides that a food shall be deemed to be misbranded "If any word, statement or other information required by or under authority of this article to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use."

47.     StarKist has violated each of these laws leading to violations of New York's consumer protection statutes by deceptively causing reasonable consumers to believe that the products are healthier than products without the Heart-Check Mark.

48.     Because StarKist products with the Heart-Check Mark are misbranded, they are illegal to manufacture, produce, process, pack, transport, possess, sell, offer, or expose for sale.

49.     For this reason, StarKist products with the Heart-Check Mark have a legal value of zero.

**Plaintiff's Purchase of StarKist Products**

50.     Plaintiff has purchased StarKist products with the Heart-Check Mark, including, StarKist Low Sodium Solid White Albacore Tuna in Water.

51.     Below is an image of StarKist products purchased by Plaintiff:



52.     Plaintiff regularly purchases StarKist Low Sodium Solid White Albacore Tuna in Water, including as late as early-February 2018.

53.     Plaintiff specifically purchased the product because of the Heart-Check Mark.

54.     Plaintiff believed that the Heart-Check Mark signified that the product was healthier than products that do not have a Heart-Check Mark on the label.

55.     Plaintiff was unaware that StarKist paid the AHA to place the Heart-Check Mark on its labels.

56.     Plaintiff was unaware that StarKist products with the Heart-Check Mark violate state and federal law.

57.     Had Plaintiff known the Heart-Check Mark is a paid endorsement, he would not have purchased the product or would not have paid as much for the product.

58.     Had Plaintiff known that the product violated state and federal law, he would not have purchased the product or would not have paid as much for the product

**Class Action Allegations**

59.     Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action against StarKist as a class action on behalf of himself and all members of the following class:  All persons who purchased StarKist products with labels or packaging containing the American Heart Association Heart-Check Mark in New York State (the "Class").

60.     Plaintiff reserves the right to modify or amend the Class definition before the Court determines whether class certification is appropriate.

61.     Excluded from the Class are: (i) Defendant and any entities in which Defendant has a controlling interest; (ii) any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant; (iii) the Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case; and (iv) all governmental entities.

62.     The members of the Class are so numerous that their joinder is impracticable.

63.     All members of the Class have been subject to and affected by the same practices and policies described herein.  There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class.

64.     The claims of the named Plaintiff are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

65.     The individually named Plaintiff will fairly and adequately represent the interests of the proposed Class.  He is committed to the vigorous prosecution of the Class claims and has retained attorneys who are qualified to pursue this litigation and have experience in class actions.

66.     The Defendant has acted or refused to act on grounds generally applicable to the Class, making final declaratory or injunctive relief appropriate.

67.     A class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:

a.     Individual claims by the members of the Class are impractical as the costs of litigation far exceed what any one individual plaintiff has at stake;

b.     As a result, individual members of the Class have no interest in prosecuting and controlling separate actions;

c.     It is desirable to concentrate litigation of the claims herein in this forum; and

d.     The proposed Class is manageable.

68.     Plaintiff is unaware of any impediment to the management of this litigation that would preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### (Violation of GBL § 349)

69.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

70.     StarKist has engaged in deceptive acts or practices in the conduct of a business, trade or commerce or in the furnishing of a service in New York State.

71.     StarKist's conduct was intentional, willful, and knowingly done.

72.     StarKist's conduct was consumer-oriented and this conduct had broad impact on consumers at large.

73.     The labels of StarKist products that contain the Heart-Check Mark deceptively cause reasonable consumers to believe that the products are healthier than products without the Heart-Check Mark.

74.     StarKist failed to disclose that it pays to use the Heart-Check Mark.

75.     StarKist failed to disclose that Heart-Check Mark is a paid endorsement.

76.     Reasonable consumers would also believe that products found in their local grocery stores do not violate state and federal laws and are lawful to sell.

77.     As a result of StarKist's conduct, Plaintiff and Class members were injured through the purchase of Starlist's products.

78.     StarKist's violation of GBL § 349 is ongoing.

79.     By reason of the foregoing, Plaintiff and the Class members are entitled to: their actual damages or fifty dollars, whichever is greater; an increase in the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars; and their reasonable attorney's fees and costs.

80.     Plaintiff and the Class members are also entitled to an injunction enjoining StarKist's deceptive acts or practices.

**SECOND CLAIM FOR RELIEF**
**(Violation of GBL § 350)**

81.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

82.     StarKist has engaged in "false advertising" within the meaning of GBL § 350-a(1).

83.     The labeling of StarKist's products with the Heart-Check Mark is misleading in a material respect.

84.     StarKist's conduct was intentional, willful, and knowingly done.

85.     StarKist's conduct was consumer-oriented and this conduct had broad impact on consumers at large.

86.     The labels of StarKist products that contain the Heart-Check Mark deceptively cause reasonable consumers to believe that the products are healthier than products without the Heart-Check Mark.

87.     StarKist failed to disclose that it pays to use the Heart-Check Mark.

88.     StarKist failed to disclose that Heart-Check Mark is a paid endorsement.

89.     As a result of StarKist's conduct, Plaintiff and Class members were injured through the purchase of Starlist's products.

90.     StarKist's violation of GBL § 350 is ongoing.

91.     By reason of the foregoing, Plaintiff and the Class members are entitled to: their actual damages or five hundred dollars, whichever is greater; an increase in the award of

damages to an amount not to exceed three times the actual damages up to ten thousand dollars; and their reasonable attorney's fees and costs.

92.     Plaintiff and the Class members are also entitled to an injunction enjoining StarKist's false advertising.

### THIRD CLAIM FOR RELIEF
### (Violation of New York Agriculture and Markets Law § 198, *et seq*.)

93.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

94.     All StarKist products with the Heart-Check Mark are misbranded.

95.     Dealing in misbranded food is a strict liability crime in New York State.

96.     With respect to all StarKist products with the Heart-Check Mark, StarKist is engaged in the manufacture, production, processing, packing, transportation, exposure, offer, possession, and holding of any such article for sale; the sale, dispensing, and giving of any such article; or the supplying or applying of any such articles in the conduct of any food establishment.

97.     All StarKist products with the Heart-Check Mark constitute "food" or a "food product" within the meaning of New York Agriculture and Markets Law § 198(1).

98.     StarKist is a "person" within the meaning of New York Agriculture and Markets Law § 198(2).

99.     Plaintiff and each Class member is a "person" within the meaning of New York Agriculture and Markets Law § 198(2).

100.    Each StarKist product label containing the Heart-Check Mark is a "label" within the meaning of New York Agriculture and Markets Law § 198(3).

101.    Each StarKist product label containing the Heart-Check Mark is "labeling" within the meaning of New York Agriculture and Markets Law § 198(4)

102.    With respect to all StarKist products with the Heart-Check Mark, StarKist is engaged in the manufacture, compound, brew, distill, produce, process, pack, transport, possess, sell, offer or expose for sale, or serve in any hotel, restaurant, eating house or other place of public entertainment any article of food which is adulterated or misbranded within the meaning of New York Agriculture and Markets Law § 199-a(1).

103.    The labels of StarKist products that contain the Heart-Check Mark deceptively cause reasonable consumers to believe that the products are healthier than products without the Heart-Check Mark.

104.    StarKist failed to disclose that it pays to use the Heart-Check Mark.

105.    StarKist failed to disclose that Heart-Check Mark is a paid endorsement.

106.    All StarKist products with the Heart-Check Mark contain labeling that is false or misleading in any particular.

107.    All StarKist products with the Heart-Check Mark have a container that is so made, formed, colored or filled as to be misleading.

108.    All StarKist products with the Heart-Check Mark contain a word, statement or other information required by or under authority of New York law to appear on the label or labeling that is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

109.    As a result of StarKist's conduct, Plaintiff and Class members were injured through the purchase of Starlist's products.

110.    By reason of the foregoing, Plaintiff and the Class members are entitled to their actual damages and punitive damages, together with their reasonable attorney's fees and costs.

**FOURTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

111.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

112.    Plaintiff and the Class members conferred a benefit upon StarKist in the form of the purchase price or a portion of the purchase price of StarKist products with the Heart-Check Mark.

113.    As a result, StarKist was enriched at the expense of Plaintiff and the Class members.

114.    StarKist was unjustly enriched.

115.    It is against equity and good conscience to permit StarKist to retain the amount by which it has been unjustly enriched.

116.    As a direct and proximate result of StarKist's unjust enrichment Plaintiff and Class members have suffered injury-in-fact and/or actual damages.

117.    By reason of the foregoing, Plaintiff and the Class Members are entitled to a disgorgement of all amounts by which StarKist has been unjustly enriched, as well as their actual damages, punitive damages, reasonable attorney's fees and costs, and injunctive, declaratory, and equitable relief barring future unlawful conduct by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment against StarKist as follows:

A.      Certifying this action as a class action, with a Class as defined above;

B.      Requiring that StarKist pay for notifying the Class members of the pendency of this suit;

C.      Awarding Plaintiff and the Class all injunctive, declaratory, and equitable relief to which they are entitled;

D.      Awarding Plaintiff and the Class monetary damages in an amount to be determined at trial, together with pre and post-judgment interest;

E.      Awarding Plaintiff and the Class statutory damages in the maximum amount provided by law;

F.      Awarding Plaintiff and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

G.      Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims for relief in this action.

Dated: White Plains, New York
       April 4, 2018

                              FINKELSTEIN, BLANKINSHIP,
                              FREI-PEARSON & GARBER, LLP

                              By: _____
                              Todd S. Garber
                              D. Greg Blankinship

                              455 Hamilton Avenue, Suite 605
                              White Plains, New York 10601
                              Tel: (914) 298-3283
                              Fax: (914) 908-6709

tgarber@fbfglaw.com
gblankinship@fbfglaw.com

*Attorneys for Plaintiff*