# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABRAHAM JACOB WARNER, individually and on behalf of all others similarly situated, | : <br> : <br> :    Case No. 1:18-cv-00406-GLS-ATB <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| STARKIST CO., | : <br> : |
| Defendant. | : <br> : |

---

## MEMORANDUM OF LAW OF DEFENDANT STARKIST CO. IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

---

ECKERT SEAMANS CHERIN & MELLOTT, LLC
*Attorneys for Defendant StarKist Co.*
Steven R. Kramer, Esquire
ECKERT SEAMANS CHERIN & MELLOTT, LLC
10 Bank Street, Suite 700
White Plains, NY 10606
Telephone: 914.949.3760
skramer@eckertseamans.com

{V0501124.1}

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ..........................................................................................................2

ARGUMENT.................................................................................................................3

I. All of Plaintiff's Claims Fail Because Plaintiff Does Not—and Cannot—Allege Facts to Support His Claimed Legal Conclusion that the American Heart Association Heart-Check Mark Is a "Paid Endorsement." ........................................3

   A. It Is Proper for This Court to Consider the Entirety of the Documents Referenced and Quoted By Plaintiff in His Complaint...................................................3

   B. The AHA Heart-Check Mark Is a Certification Process, Not a Paid Endorsement. .4

II. Each of Plaintiff's Claims Additionally Fails on Independent Grounds. .................7

   A. Plaintiff's Claims Pursuant to GBL §§ 349 and 350 Fail Because StarKist's Label Is Not Objectively Misleading as a Matter of Law..........................................7

   B. N.Y. Agric. & Mkts. Law section 198 *et seq*. Does Not Create an Independent Private Remedy.........................................................................9

   C. Plaintiff's Unjust Enrichment Claim Fails to State a Claim and Should Therefore Be Dismissed. ..................................................................................9

III. Plaintiff Lacks Article III Standing to Seek Injunctive Relief..................................10

CONCLUSION............................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*ACLU v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ........................................................... 12

*Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412 (S.D.N.Y. 2015) ............................ 11, 12

*Alce v. Wise Foods, Inc.*, 2018 U.S. Dist. LEXIS 54009
(S.D.N.Y. March 27, 2018) ..................................................................................... 7, 10, 11, 12

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .............................................. 4

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .................................................................. 11

*Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177 (N.Y. 2012) ................................................ 10

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) ............................. 8

*Daniel v. Mondelez Int'l, Inc.*, 2018 U.S. Dist. LEXIS 31074 (E.D.N.Y. Feb. 26, 2018) .... 8

*DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54 (S.D.N.Y. 2010) .................................. 4

*Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340 (2d Cir. 1998) ...................................... 11

*Dodge v. Cnty of Orange*, 103 F. App'x 688 (2d Cir. 2004) .................................................. 12

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) ..................................................... 8

*Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 U.S. Dist. LEXIS 75271
(N.D. Cal. June 2, 2014) ........................................................................................................... 12

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) ............................ 12

*In re Mid-Island Hosp., Inc.*, 276 F.3d 123 (2d Cir. 2002) .................................................... 10

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69 (2d Cir. 1995) .................. 3

*Izquierdo v. Mondelez Int'l, Inc.*, 2016 U.S. Dist. LEXIS 149795
(S.D.N.Y. Oct. 26, 2016) .......................................................................................................... 9

*Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014) ............................... 10

*Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304 (S.D.N.Y. 2017) ...................... 8

*La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496 (S.D.N.Y. 2018) ..................... 3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................11

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ...........................................................8

*Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503 (S.D.N.Y. 2015) .......................................10

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) .......................................................................11

*Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976) ............................................11

*Stewart v. Riviana Foods Inc.*, 2017 U.S. Dist. LEXIS 146665
(S.D.N.Y. Sept. 11, 2017)................................................................................................3, 4

*Wurtzburger v. Ky. Fried Chicken*, 2017 U.S. Dist. LEXIS 205881
(S.D.N.Y. Dec. 13, 2017) ....................................................................................................8

## **STATUTES**

New York General Business Law ("GBL") § 349................................................. 2, 7, 8, 9, 10

New York General Business Law ("GBL") § 350................................................. 2, 7, 8, 9, 10

New York Agriculture and Markets Law ("N.Y. Agric. & Mks. Law") § 198, et seq.......2, 9

## **RULES**

Federal Rule of Civil Procedure 12(b)(1) .............................................................................10, 13

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................2, 13

## PRELIMINARY STATEMENT

In an effort to help shoppers make heart-healthy food choices, the American Heart Association ("AHA") developed the Heart-Check Mark ("Mark" or "Heart-Check Mark"), a symbol that can be placed on the labels of products which meet criteria for heart-healthy food. As described more fully below, each year, a product that seeks to bear the Heart-Check Mark must go through the AHA's certification process to ensure the product meets the certification criteria before a manufacturer is permitted to place the Heart-Check Mark on the product label. As part of this process, a manufacturer is required by the AHA to submit information about the product, various forms, and an application fee to cover the cost of operating the certification program.

StarKist Co. ("StarKist") has submitted certain of its products to the AHA for review. Products that were determined by the AHA to have met the AHA criteria were approved to bear the Heart-Check Mark on product packaging, indicating to consumers the products meet criteria for heart-healthy food.

Plaintiff does *not* allege StarKist's products fail to meet the proper AHA certification criteria to bear the Heart-Check Mark, or the nutrition representations on StarKist's products are incorrect, or that StarKist's labels are incorrect in any other way.

Instead, Plaintiff alleges without any factual support that StarKist's payment of an application fee to defray the administrative costs of the Heart-Check Mark program renders the Mark a "paid endorsement," which should have been disclosed on StarKist's label. In an attempt to bolster his claims, Plaintiff includes in his complaint selectively chosen excerpts from the AHA website that are taken wholly out of context and conveniently omits the important information from the same webpage, which specifically belies Plaintiff's claims regarding the Heart-Check

Mark. Plaintiff's conclusory statements are unsupportable, and therefore should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

Plaintiff filed a four-count Complaint on April 4, 2018, alleging violations of New York General Business Law ("GBL") Section 349, GBL Section 350, New York Agriculture and Markets Law ("N.Y. Agric. & Mkts. Law") Section 198 *et seq.*, as well as a claim for unjust enrichment. *See* Complaint, *generally*. Plaintiff alleges that StarKist places the Heart-Check Mark on some of its products' labels, that the Heart-Check Mark is a "paid endorsement" because an application fee was paid to the AHA, that StarKist fails to disclose that the Heart-Check Mark is a "paid endorsement" on its labels, and that the Heart-Check Mark misleads consumers to believe that StarKist's products are more heart-healthy than products without a Heart-Check Mark. *See* Complaint, *inter alia*, ¶¶ 16-21, 30-32, 47, 73-75, 86-88, 103-105. Plaintiff alleges he would not have purchased StarKist products for the price he paid (or at all) if he had known that StarKist paid a fee to the AHA during the certification process. Complaint, ¶¶ 57, 58. Nowhere in his Complaint does Plaintiff allege that the StarKist products in question fail to meet the AHA's specific nutritional criteria for use of the Heart-Check Mark, that the StarKist products are not, in fact, heart-healthy according to FDA and/or AHA guidelines, that StarKist's labeling asserts a health claim inaccurately, or that the AHA permits a manufacturer to use the Heart-Check Mark automatically upon payment of a fee. *Id., generally*. However, each of Plaintiff's claims fails as a matter of law.

**ARGUMENT**

The entirety of Plaintiff's complaint fails as a matter of law because it is predicated upon the conclusory and unsupportable allegation that the Heart-Check Mark is a "paid endorsement." Each of Plaintiff's claims also fails as a matter of law for separate and independent reasons.

**I.   All of Plaintiff's Claims Fail Because Plaintiff Does Not—and Cannot—Allege Facts to Support His Claimed Legal Conclusion that the American Heart Association Heart-Check Mark Is a "Paid Endorsement."**

In his Complaint, Plaintiff asserts legal conclusions that the AHA "sells the right to use the Heart-Check Mark" and the Heart-Check Mark is a "paid endorsement." Complaint, ¶¶ 21, 32, 75, 88, 105. Nowhere does Plaintiff allege factual support for this conclusion, i.e. that the application fee paid to the AHA entitles a manufacturer to use the Heart-Check Mark without having to first meet the AHA's nutritional certification criteria.

In an attempt to support his allegations, Plaintiff selectively cites to several documents, including the AHA website. *Id.*, ¶ 29. When these excerpts are read in the proper context of the entire document, however, it becomes clear that Plaintiff's conclusory statements that the AHA Heart-Check Mark is a paid endorsement cannot be supported factually.

**A.   It Is Proper for This Court to Consider the Entirety of the Documents Referenced and Quoted By Plaintiff in His Complaint.**

A court may consider documents beyond the pleadings in deciding a motion to dismiss without converting the proceeding into one for summary judgment when a plaintiff chooses not to attach to the complaint a document upon which he relies and which is integral to the complaint. *Stewart v. Riviana Foods Inc.*, 2017 U.S. Dist. LEXIS 146665, *16 (S.D.N.Y. Sept. 11, 2017), citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). *See also La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 502 (S.D.N.Y. 2018) (A court may "consider documents attached to the complaint; statements or documents incorporated into the

complaint by reference; . . . and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.").

> Generally, a court may incorporate documents referenced where (1) plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed. A document is "integral" if the plaintiff has (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint.

*Stewart*, 2017 U.S. Dist. LEXIS 146665 at *16-17 (internal citations and quotations omitted), *citing DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010), *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

In his Complaint, Plaintiff relies upon selective excerpts from the AHA website as purported evidence to support the allegations in his Complaint that food manufacturers "eagerly pay the AHA for its endorsement because they know that the Heart-Check Mark will increase their sales and their profits." Complaint, ¶¶ 24, 29. Specifically, Plaintiff quotes the first two paragraphs of the AHA website page entitled "Heart-Check Mark for Food Manufacturers & Trade Associations." *Id*. at ¶ 29. In as much as Plaintiff relies upon the AHA website materials in framing his Complaint, clearly quotes the website in his Complaint as the foundation underpinning his claims, does not dispute the authenticity of the website, and undeniably had actual notice of the information on the webpage when drafting his Complaint, it is proper for this Court to consider the complete contents of the AHA webpage.

### B. The AHA Heart-Check Mark Is a Certification Process, Not a Paid Endorsement.

Plaintiff claims, without supporting factual allegations, that the AHA Heart-Check Mark is a "paid endorsement." While Plaintiff has alleged that certain StarKist products contain the Heart-Check Mark, and that StarKist paid an application fee to the AHA, Plaintiff has not—and

cannot—allege facts to support a finding that the fee paid automatically entitled StarKist to use the Heart-Check Mark.

Plaintiff is unable to make such factual allegations because the documents incorporated into the Complaint establish that a manufacturer's application will be reviewed by the AHA to determine if its product meets the applicable nutritional criteria, and that the payment of the application fee does not guarantee a manufacturer's use of the Mark.  Indeed, in relying on the AHA website to frame his Complaint, Plaintiff deliberately omitted the following critical information that appeared just below the language quoted in his Complaint:

> **Connect heart-conscious consumers with your heart-healthy products.  To apply for certification or get more information, contact certify@heart.org or (214) 706-1654.**
>
> **Frequently Asked Questions**
>
> **1.  How can I use the Heart-Check mark?**
> Once your product is certified, you may display the Heart-Check mark on food packaging or in your advertising and promotions.
>
> **2.  How long does the application process for certification take?**
> The application process usually takes between four and six weeks, but can take longer if lab testing or other verification of the product's qualification for certification is required.
>
> **3.  What are the steps to applying for certification?**
> There are several steps to certifying heart-healthy products:
>
> **Step 1 –** Review the nutrition requirements to determine if your product's nutritional profile fits within our limits.
>
> **Step 2 –** Contact certify@heart.org or (214) 706-1654 to begin the application process.
>
> **Step 3 –** Complete and submit all forms, product packaging, and certification fees.

> **Step 4 –** Your product is reviewed for compliance with the nutrition requirements. Lab testing may be required if your product approaches the upper limits for fat, saturated fat, trans fat, cholesterol and/or sodium.
>
> **Step 5 –** Once it has been determined that your product is eligible for certification, you are asked to sign our Certification Mark License Agreement. Then, congratulations, your product is certified for one year.
>
> **4. How long will my product be certified?**
> Certification is renewed annually. Annual renewal allows the program to re-review each product to determine if it remains eligible for certification.

"Heart-Check Mark for Food Manufacturers & Trade Associations" http://www.heart.org/HEARTORG/HealthyLiving/HealthyEating/Heart-CheckMarkCertification/How-the-Heart-Check-Food-Certification-Program-Works_UCM_300133_Article.jsp, attached hereto as Exhibit 1. This webpage further provides a link to the AHA "Heart-Check Food Certification Program Nutrition Requirements." According to this webpage:

> The Heart-Check Food Certification Program's nutrition requirements for certification are based on the sound science of the American Heart Association regarding healthy dietary recommendations including food categories, specific product ingredients and nutrient values.
>
> To be certified, a product must meet specific nutrition requirements. The Heart-Check program has seven different categories of certification, and each category has a different set of nutrition requirements. All products must also meet government regulatory requirements for making a coronary heart disease health claim. When a product is close to exceeding the limits for fat, saturated fat, cholesterol, trans fat or sodium, independent third-party lab testing is conducted to verify that it meets our nutrition requirements.
>
> . . .
>
> *Food manufacturers participating in the program pay administrative fees to the American Heart Association to cover program operating expenses.*

"Heart-Check Food Certification Program Nutrition Requirements," http://www.heart.org/HEARTORG/HealthyLiving/HealthyEating/Heart-CheckMarkCertification/Heart-Check-Food-Certification-Program-Nutrition-Requirements_UCM_300914_Article.jsp#.Wu9yJKQvzIU (emphasis in original), attached hereto as Exhibit 2.

Thus, not only does Plaintiff fail to allege facts to support his conclusory allegation that the AHA Heart-Check Mark is a "paid endorsement," the materials relied upon by Plaintiff in his Complaint clearly explain the AHA's process for certification of foods and the nutritional requirements that must be met before a product can bear the Mark. Far from "selling" their Mark, the AHA annually reviews submitted products for compliance with its nutrition requirements, including potential independent lab testing. *See* Exhibit 1, "Heart-Check Mark for Food Manufacturers & Trade Associations." The application fee that a manufacturer pays does not automatically entitle a manufacturer to place the Heart-Check Mark on its products; rather, the fee is submitted with the application for certification to "cover program operating expenses." *See* Exhibit 2, "Heart-Check Food Certification Program Nutrition Requirements."

Because Plaintiff fails to state factual allegations sufficient to support his conclusory claim that the AHA's Heart-Check Mark is a "paid endorsement," Plaintiff's claims fail as a matter of law and the Complaint should be dismissed in its entirety with prejudice.

**II.     Each of Plaintiff's Claims Additionally Fails on Independent Grounds.**

    **A.     Plaintiff's Claims Pursuant to GBL §§ 349 and 350 Fail Because StarKist's Label Is Not Objectively Misleading as a Matter of Law.**

A plaintiff must successfully plead three elements to properly assert a cause of action under GBL §§ 349 and 350: (i) "the challenged act or practice was consumer-oriented"; (ii) "it was misleading in a material way"; and (iii) "the plaintiff suffered injury as a result of the deceptive act." *Alce v. Wise Foods, Inc.*, 2018 U.S. Dist. LEXIS 54009, *23-24 (S.D.N.Y. March 27, 2018),

quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014); *Wurtzburger v. Ky. Fried Chicken*, 2017 U.S. Dist. LEXIS 205881 (S.D.N.Y. Dec. 13, 2017) (stating that claims under GBL § 350 must meet all of the same elements as a claim under GBL § 349).  The New York Court of Appeals has defined "misleading" objectively, whereby the act or omission must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

GBL §§ 349 and 350 "require more than a determination as to whether [an alleged violation], standing alone, constitutes misrepresentation.  Rather, [these provisions] require an additional finding that a reasonable consumer in like circumstances would consider the misrepresentation material."  *Daniel v. Mondelez Int'l, Inc.*, 2018 U.S. Dist. LEXIS 31074 (E.D.N.Y. Feb. 26, 2018), citing *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017), *aff'd sub nom. Kommer v. Bayer Consumer Health*, 710 F. App'x 43 (2d Cir. 2018).  It is well settled that a court, as a matter of law, may determine that an allegedly deceptive advertisement would not have misled a reasonable consumer.  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam).

Plaintiff cannot, in this case, establish that the Heart-Check Mark is objectively misleading.  The Mark, pictured in Plaintiff's Complaint, states "American Heart Association – CERTIFIED – Meets Criteria For Heart-Healthy Food."  *See* Complaint, ¶ 51.  Plaintiff has not asserted that the AHA's certification is inaccurate in any way or the applicable StarKist products do not, in fact, meet the AHA's criteria.[1]  The fact that other manufacturers' products do not or cannot make similar cardiac health claims on their labeling is not within StarKist's control and does not render

---

[1] It should be noted that only those StarKist products which meet the applicable nutritional criteria have been certified by the AHA.

the undisputed claim that the applicable products meet the AHA's certification criteria misleading. As such, Plaintiff's claims under GBL §§ 349 and 350 fail as a matter of law and, therefore, Counts I and II should be dismissed with prejudice.

### B. N.Y. Agric. & Mkts. Law section 198 *et seq*. Does Not Create an Independent Private Remedy.

In Count III, Plaintiff alleges a separate cause of action under New York Agriculture and Markets Law section 198 *et seq*. This statute does not provide a stand-alone private remedy to a consumer. Instead, allegations of violations of this statute must be part of a claim of violation of New York's consumer protection laws (i.e., GBL §§ 349, 350) (here, Counts I and II). *See Izquierdo v. Mondelez Int'l, Inc.*, 2016 U.S. Dist. LEXIS 149795, *8 (S.D.N.Y. Oct. 26, 2016) ("New York law provides that 'Food shall be deemed to be misbranded . . . If its container is so made, formed, colored or filled as to be misleading.' N.Y. Agric. & Markets Law § 201(4). Like its federal counterpart, New York law also provides remedies, including private rights of action, for misbranding food under consumer protection laws. One such law is the New York General Business Law § 349, which broadly prohibits use of 'deceptive acts or practices' in business dealings in New York.").

Since Plaintiff cannot properly sustain a cause of action for violation of New York labeling laws separate from his GBL claims, Count III fails as a matter of law and should be dismissed with prejudice.

### C. Plaintiff's Unjust Enrichment Claim Fails to State a Claim and Should Therefore Be Dismissed.

Pursuant to New York law, "unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract or committed a recognized tort, circumstances create an equitable obligation

running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). A plaintiff must show (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscious require restitution. *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 129 (2d Cir. 2002). Second Circuit courts have recognized that "'an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Alce*, 2018 U.S. Dist. LEXIS 54009, at *29-30, *quoting Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015); *see also Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014). In *Koenig*, the court dismissed an unjust enrichment claim in which plaintiffs alleged that they had purchased the product at issue because of purported misrepresentations, explaining that "to the extent that Plaintiffs' other claims succeed, 'the unjust enrichment claim is duplicative,' and 'if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.'" *Koenig*, 995 F. Supp. 2d at 290, *quoting Corsello*, 967 N.E.2d 1177.

Here, Plaintiff's unjust enrichment claim is duplicative of his claims under GBL §§ 349 and 350. As such, Plaintiff's claim for unjust enrichment in Count IV should be dismissed with prejudice.

### III.   Plaintiff Lacks Article III Standing to Seek Injunctive Relief.

Although Plaintiff claims that he is entitled to injunctive relief, Plaintiff fails to set forth any of the elements necessary to support a request for injunctive relief. For this reason alone, this demand for relief should be dismissed. In addition, even if Plaintiff were to attempt to set forth such elements in his Complaint, this demand for relief would fail as a matter of law. Plaintiff lacks standing to seek such relief because he does not allege a future harm and cannot do so as a matter of law. As such, Plaintiff's claims for injunctive relief should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.

To establish standing, a party must meet the minimum requirements imposed by Article III of the Constitution by alleging an actual case or controversy. *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 416 (S.D.N.Y. 2015), *citing City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). A party must establish standing for each claim and form of relief sought. *Id*. Specifically, "a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." *Id*., *quoting Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). "The 'injury in fact' must be a 'concrete and particularized' harm to a 'legally protectable interest' that is 'actual or imminent not conjectural or hypothetical.'" *Alce*, 2018 U.S. Dist. LEXIS 54009 and *12, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Furthermore, a plaintiff must allege future, not merely past injury.

> To satisfy the injury requirement when seeking injunctive relief, a plaintiff cannot rely on a past injury alone because '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.' *Lyons*, 461 U.S. at 102. . . . Rather, the plaintiff 'must show a likelihood that he . . . will be injured in the future.' *Shain v. Ellison*, 356 F.3d 211, 214 (2d Cir. 2004) (internal quotation marks omitted); *see also Deshawn E. by Charlotte E.*, 156 F.3d at 344 ('A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future.').

*Albert*, 151 F. Supp. 3d at 416-17.

A plaintiff who pursues a class action is subject to the above requirement to individually demonstrate that he or she will suffer future injury. *Id*. at 417, *citing Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified

members of the class to which they belong and which they purport to represent.") (internal quotation marks omitted); *Dodge v. Cnty of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004) ("[T]he named plaintiffs in this action must themselves have standing to seek injunctive relief."). *See also Albert* 151 F. Supp. 3d at 418 ("Furthermore, to seek injunctive relief on behalf of a class, the named plaintiffs must themselves have standing. In the instant action, Plaintiffs do not have standing to seek injunctive relief because they have not alleged that they will purchase Defendants' [products] in the future. Because they do not have individual standing, they also do not have standing on behalf of the putative New York . . . class[].").

The threatened injury must be "certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient." *Alce*, 2018 U.S. Dist. LEXIS 54009, at \*15, *quoting ACLU v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015). Thus, "[c]onsumers who were misled by deceptive food labels lack standing for injunctive relief because there is no danger that they will be misled in the future." *Id*. at \*17, *quoting Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014), *and citing Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 U.S. Dist. LEXIS 75271 (N.D. Cal. June 2, 2014) ("The named plaintiffs in this case allege that had they known the Whole Foods products they purchased contained [Sodium Acid Pyrophosphate], they would not have purchased them. Now they know. There is therefore no danger that they will be misled in the future.").

Plaintiff does not allege that he will purchase StarKist products in the future and/or that he will continue to be allegedly misled by the Heart-Check Mark, nor is there any "danger that [he] will be misled in the future." *Id*. Because Plaintiff has not, and cannot, allege future injury, he lacks standing to demand injunctive relief. As such, these claims for relief should be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Defendant StarKist Co. respectfully requests that this Court dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6). In the alternative, the Court should dismiss Plaintiff's claims for injunctive relief pursuant to Rule 12(b)(1).

Dated: May 18, 2018

                                                Respectfully submitted,

                                                ECKERT, SEAMANS, CHERIN & MELLOTT, LLC

                                                *s/ Steven R. Kramer*
                                                Steven R. Kramer, Esq. (505074)
                                                ECKERT SEAMANS CHERIN & MELLOTT, LLC
                                                10 Bank Street, Suite 700
                                                White Plains, NY 10606
                                                Telephone: 914.949.3760
                                                skramer@eckertseamans.com

                                                *Counsel for Defendant  StarKist Co.*