UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

ABRAHAM JACOB WARNER, individually,  :
and on behalf of all others similarly situated,

Plaintiff,

-vs.-

STARKIST CO.,

Defendant.

-----------------------------------------------------------x

Case No. 1:18-cv-00406-GLS-ATB

# PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
455 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 908-6709

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

FACTS ................................................................................................................ 3

ARGUMENT ...................................................................................................... 6

    I.     PLAINTIFF HAS PLAUSIBLY ALLEGED THAT THE
            AHA HEART-CHECK MARK IS A PAID ENDORSEMENT. ........................... 6

    II.    DEFENDANT CANNOT RELY ON MATERIALS EXTERNAL
           TO THE COMPLAINT ON A MOTION TO DISMISS. ...................................... 9

         A.     Defendant's Exhibits Are Not Incorporated By Reference
              In The Complaint And Are Not Integral To The Complaint. ..................... 9

         B.     Defendant's Exhibits Are Not Admissible As Evidence. ........................... 12

    III.   PLAINTIFF HAS PLAUSIBLY ALLEGED THAT DEFENDANT'S
           PRODUCT LABELS ARE MISLEADING. .......................................................... 15

    IV.   THE NEW YORK AGRICULTURE AND MARKETS LAW
           PROVIDES A PRIVATE CAUSE OF ACTION FOR CONSUMERS
           OF MISBRANDED FOOD PRODUCTS. ............................................................. 17

    V.    PLAINTIFF HAS PLAUSIBLY ALLEGED A CLAIM FOR
            UNJUST ENRICHMENT. ..................................................................................... 18

    VI.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF. .................... 19

CONCLUSION ..................................................................................................... 21

## TABLE OF AUTHORITIES

### Cases

*Abounader v. Strohmeyer & Arpe Co.*,
154 N.E. 309 (N.Y. 1926) ........................................................................................ 17

*Ackerman v. Coca-Cola Co.*,
2010 WL 2925955 (E.D.N.Y. July 21, 2010) ........................................................ 15

*Ackerman v. Coca-Cola Co.*,
2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................................................ 20

*AmBase Corp. v. City Investing Co. Liquidating Trust*,
326 F.3d 63 (2d Cir. 2003) .................................................................................... 6, 7

*Ang v. Bimbo Bakeries USA, Inc.*,
2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) ................................................ *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 6

*Baker v. Goldman Sachs & Co.*,
669 F.3d 105 (2d Cir. 2012) .................................................................................... 12

*Belfiore v. Procter & Gamble Co.*,
94 F. Supp. 3d 440 (E.D.N.Y. 2015) ...................................................................... 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 6

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .................................................................................... 10

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir. 1989) ..................................................................................... 9, 10

*Delgado v. Ocwen Loan Servicing, LLC*,
2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ...................................................... 20

*Delgado v. Ocwen Loan Servicing, LLC*,
2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ........................................................ 19

*DeLuca v. AccessIT Group, Inc.*,
695 F. Supp. 2d 54 (S.D.N.Y. 2010) ...................................................................... 10

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ................................................................. 15

*Fowlkes v. Adamec*,
    432 F.3d 90 (2d Cir. 2005) ................................................................. 6, 7

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016) ................................................................. 10

*Goldemberg v. Johnson & Johnson Consumer Co., Inc.*,
    317 F.R.D. 374 (S.D.N.Y. Oct. 4, 2016) ................................................ 20

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985) ................................................................. 9

*Intl. Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ................................................................. 10

*Irvine v. Kate Spade and Co.*,
    2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017) ........................................ 17

*Izquierdo v. Mondelez Intl., Inc.*,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ........................................ 18

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
    386 F.3d 107 (2d Cir. 2004) ................................................................. 19

*Kacocha v. Nestle Purina Petcare Co.*,
    2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ........................................ 15

*Koehler v. Litehouse, Inc.*,
    2012 WL 6217635 (N.D. Cal. Dec.13, 2012) ........................................ 20

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) ........................................................ 20

*La Vigne v. Costco Wholesale Corp.*,
    284 F. Supp. 3d 496 (S.D.N.Y. 2018) ................................................... 10

*Larsen v. Trader Joe's Co.*,
    2012 WL 5458396 (N.D. Cal. June 14, 2012) ........................................ 20

*McCracken v. Verisma Sys., Inc.*,
    2017 WL 2080279 (W.D.N.Y. May 15, 2017) ........................................ 18

*Merck Eprova AG v. ProThera, Inc.*,
   2010 WL 9098310 (S.D.N.Y. Oct. 20, 2010) ........................................... 16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) ................................................................... 13

*Network Commun., Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006) ............................................................. 10, 15

*Nuss v. Sabad*,
   2016 WL 4098606 (N.D.N.Y. July 28, 2016) ......................................... 18

*Petrosino v. Stearn's Products, Inc.*,
   2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ..................................... 15, 20

*Porrazzo v. Bumble Bee Foods, LLC*,
   822 F. Supp. 2d 406 (S.D.N.Y. 2011) ..................................................... 18

*Samodovitz v. Cocchiola*,
   2017 WL 1401310 (N.D.N.Y. Apr. 19, 2017) ......................................... 12

*Segedie v. Hain Celestial Group, Inc.*,
   2015 WL 2168374 (S.D.N.Y. May 7, 2015) ............................................ 15

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004) ..................................................................... 10

*Stanley v. Community Bank, N.A.*,
   2009 WL 261333 (N.D.N.Y. Feb. 4, 2009) ............................................. 19

*Stewart v. Riviana Foods Inc.*,
   2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ......................................... 10

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................. 15

## Statutes

21 U.S.C. § 321(n) ........................................................................... 5, 16

21 U.S.C. § 343 .................................................................................. 4, 5

N.Y. Agric. & Mkts. Law § 199-a ...................................................... 3, 4

N.Y. Agric. & Mkts. Law § 201 ......................................................... 3, 4

N.Y. General Business Law § 349 ................................................................ *passim*

N.Y. General Business Law § 350 ................................................................ *passim*

## Rules

Fed. R. Civ. P. 8(d) ................................................................................ 19

Fed. R. Civ. P. 12(b)(1) ......................................................................... 19

Fed. R. Civ. P. 12(b)(6) ........................................................................... 6

Fed. R. Evid. 106 ................................................................................. 12

Fed. R. Evid. 201 ................................................................................. 13

Fed. R. Evid. 802 ................................................................................. 13

## Regulations

21 C.F.R. § 1.21 ..................................................................................... 4

21 C.F.R. § 101.14(a)(1) ........................................................................ 5

*Final Rule: Food Labeling; General Requirements for Health Claims for Food*,
    58 Fed. Reg. 2478 (Jan. 6, 1993) ........................................................ 2, 5, 16

## INTRODUCTION

Plaintiff Abraham Jacob Warner ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion of defendant StarKist Co. ("Defendant") to dismiss Plaintiff's complaint.

Plaintiff's case is as simple as it is compelling.  In an effort to increase sales, Defendant is engaged in a scheme to deceive consumers through its placement of the American Heart Association "Heart-Check Mark" on its product labels.  The appearance of the name and mark of the American Heart Association ("AHA") on a product label causes reasonable consumers to believe that the product is healthier than similar products without the AHA name and mark on their labels.  However, Defendant's product labels do not disclose that the Heart-Check Mark is simply a paid endorsement.  As a means of generating revenue, the AHA sells to food manufacturers the right to use the AHA name and mark on their products.  The AHA markets the Health-Check Mark to food manufacturers by demonstrating how the AHA's name and mark increase product sales.  Defendant's failure to disclose that the Heart-Check Mark is a paid endorsement is an omission of material fact that renders its labels misleading.  This omission also renders Defendant's products misbranded in violation of both federal and New York State law.

Plaintiff's complaint alleges that the Heart-Check Mark on Defendant's products is an undisclosed paid endorsement.  *See* Complaint ¶¶ 4-5, 17-30.  Under long-established standards for the determination of motions to dismiss, a court must accept the facts alleged in the complaint as true and construe all reasonable inferences in the light most favorable to the plaintiff.  Defendant, unable to plausibly argue that the complaint fails to state a claim, instead, asks this Court to ignore this standard, as well as the allegations in the complaint.

Rather, Defendant requests that this Court consider -- and accept as true -- two web pages

from the AHA website that are external to the complaint.  Those two documents (annexed as Exhibit 1 and Exhibit 2 to the Declaration of Steven R. Kramer ("Kramer Decl.")) are neither incorporated by reference in the complaint, nor integral to the complaint.  They are also nothing but unsubstantiated hearsay that may not be considered for the truth of their contents.

Even if the Court did accept the two exhibits as true for purposes of this motion, neither undermines the allegations in the complaint.  Neither precludes a finding of fact that the Heart-Check Mark is an undisclosed paid endorsement, and neither precludes a finding of fact that reasonable consumers are misled by the omission of material fact on Defendant's product labels that Defendant paid the AHA to place the AHA name and mark on Defendant's products.  Indeed, the Food and Drug Administration ("FDA") has specifically determined "that endorsements made for compensation by private organizations or individuals may be misleading to consumers" and that paid endorsements on food products must be disclosed.  *See Final Rule: Food Labeling; General Requirements for Health Claims for Food*, 58 Fed. Reg. 2478, 2485 (Jan. 6, 1993).

Nevertheless, Defendant asserts that the Heart-Check Mark on its products cannot be misleading to reasonable consumers as a matter of law because Defendant's labels accurately reflect that its products meet AHA standards.  However, Plaintiff's allegations that the labels are deceptive and misleading are not predicated on whether Defendant's products meet AHA standards – but on the omission of material fact that Defendant paid the AHA in order to place the AHA name and mark on its products.  Any argument that such an omission is not misleading *as a matter of law* must fall of its own weight.  This is particularly so where the FDA has found that such omissions can be misleading to consumers and has explicitly barred such undisclosed paid endorsements.  *Id*.  Moreover, with respect to claims under General Business Law ("GBL")

§§ 349 and 350, whether a label is deceptive or misleading is a factual issue that cannot be determined on a motion to dismiss.

New York State law also bars such misleading and misbranded food labels. *See* N.Y. Agric. & Mkts. Law §§ 199-a(1) and 201(1), (4), and (6). In addition to his other claims for relief, Plaintiff alleges a claim under the New York Agriculture and Markets Law. While Defendant asserts that this law does not provide a private cause of action, New York courts have long held that the law does, in fact, provide a private cause of action.

For all these reasons, Defendant's motion should be denied in its entirety.

## FACTS

Consumers have become increasingly health-conscious when shopping for food products. Complaint ¶ 11. Consumers specifically look for foods they believe will reduce their likelihood of developing heart disease, the leading cause of death in the United States. *Id.* ¶¶ 10-13. Defendant is one of the largest producers of seafood products in the United States. *Id.* ¶ 1. It intentionally misleads health-conscious consumers regarding its products. *Id.* ¶ 14. It does so by prominently displaying the AHA "Heart-Check Mark" on product labels. *Id.* ¶¶ 2, 16. Reasonable consumers see the Heart-Check Mark and mistakenly believe that a product with a Heart-Check Mark is healthier than a product without a Heart-Check Mark. *Id.* ¶ 3. However, Defendant's product labels do not disclose that the Heart-Check Mark is actually a paid endorsement from the AHA. *Id.* ¶¶ 19-20.

Defendant pays the AHA an annual fee to use the AHA's name and mark on Defendant's products. *Id.* ¶¶ 17-18. This is a mutually beneficial relationship between the AHA and its food manufacturer licensees. The AHA makes a significant profit off the sale of rights to use the Heart-Check Mark. *Id.* ¶ 18. At the same time, the presence of the AHA's endorsement attracts

health-conscious consumers, increases sales, and allows Defendant and other food manufacturers to charge a price premium for their products. *Id*. ¶¶ 23-24.

Plaintiff purchased Defendant's products with the Heart-Check Mark because he believed the Heart-Check Mark signified that those products were healthier than products without the mark. *Id*. ¶¶ 53-54. Specifically, he regularly purchased StarKist Low Sodium Solid White Albacore Tuna in Water. *Id*. ¶¶ 50-52. Plaintiff was unaware that the AHA Heart-Check Mark was a paid endorsement. *Id*. ¶ 55. He was also unaware that such misbranded food products are illegal under New York State and federal law. *Id*. ¶ 56. Had he known that AHA Heart-Check Mark was a paid endorsement, or that these products are illegal, he would not have purchased these products, or would not have paid as much. *Id*. ¶¶ 57-58.

## The Federal And New York State Regulatory Schemes

The Food, Drug and Cosmetic Act and the New York Agriculture and Markets Law prohibit the misbranding of food products. *See* 21 U.S.C. § 343; N.Y. Agric. & Mkts. Law §§ 199-a and 201. The FDA has enacted rules and regulations against undisclosed paid endorsements from organizations such as the AHA. Indeed, presciently, before the Heart-Check Mark program was ever established, the FDA explicitly raised concerns about potential endorsement programs from the AHA and similar organizations.

Federal and New York State law preclude misleading food labels and containers and require food products to reveal all material facts. *See* 21 U.S.C. §§ 343(a) and (d); N.Y. Agric. & Mkts. Law §§ 199-a(1) and 201(1), (4), and (6); 21 C.F.R. § 1.21. Endorsements such as the AHA Heart-Check Mark fall within the FDA's definition of "health claims":

> Health claim means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, *including "third party" references, written statements (e.g., a brand name including a term such as "heart"), symbols (e.g., a heart symbol)*, or vignettes, characterizes the relationship

> of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition.

21 C.F.R. § 101.14(a)(1) (emphasis added).  In 1993, the FDA promulgated a final rule that makes clear that AHA endorsements are "health claims":

> [A] third party endorsement would constitute an implied health claim if the endorsement references a particular food or substance, and the name of the endorsing organization references a particular disease (***e.g., American Heart Association***). In such an endorsement, both basic elements would be present. As a result, a link would be created between the food/substance and the specific disease that could be reasonably understood by consumers as asserting that the product is useful in reducing the risk of developing that disease.

*See Final Rule: Food Labeling; General Requirements for Health Claims for Food*, 58 Fed. Reg. 2478, 2484 (Jan. 6, 1993) (emphasis added).  The rule provides that food labels must disclose if an endorsement is provided in return for payment.  *Id*. at 2485.  The FDA determined that undisclosed paid endorsements are misleading and render a product misbranded for failure to reveal a material fact:

> [T]he agency recognizes that endorsements made for compensation by private organizations or individuals may be misleading to consumers. The agency is advising that *when such endorsements are made, a statement should be included in close proximity to the claim, informing consumers that the organization or individual was compensated for the endorsement. Failure to divulge this information on a label that bears a paid endorsement would cause the product to be misbranded under sections 403(a) [21 U.S.C. § 343(a)] and 201(n) [21 U.S.C. § 321(n)] of the act for failure to reveal a fact that is material.*

*Id*. (emphasis added).

**ARGUMENT**

Rule 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, a court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *AmBase Corp. v. City Investing Co. Liquidating Trust,* 326 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks and citation omitted). Therefore, in reviewing a motion to dismiss, a court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in [the plaintiff's] favor." *Fowlkes v. Adamec,* 432 F.3d 90, 95 (2d Cir. 2005) (citation omitted).

To survive a motion to dismiss, a claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Thus, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* but "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

## I.   PLAINTIFF HAS PLAUSIBLY ALLEGED THAT THE AHA HEART-CHECK MARK IS A PAID ENDORSEMENT.

Plaintiff's complaint alleges that the Heart-Check Mark is a paid endorsement. The complaint alleges that Defendant pays the AHA on an annual basis for the right to use the AHA's name and mark on Defendant's food products. *See* Complaint ¶¶ 16-22. The complaint further alleges that the Heart-Check Mark program is mutually financially beneficial to both food manufacturers and the AHA. *Id*. ¶¶ 22-29. The AHA profits off the revenue generated by the Heart-Check Mark program, and the presence of the AHA name and mark on food products increases sales of those products. *Id*. The complaint also alleges that Defendant's failure to

disclose that the Heart-Check Mark is a paid endorsement is an omission of material fact that causes the labels to be misleading. *Id.* ¶¶ 1-3, 14, 30. This failure to disclose also renders the products misbranded under both federal and New York State law. *Id.* ¶¶ 33-49.

Defendant ignores these allegations. Instead, it puts forth its own alternative facts that are not substantiated by admissible evidence. Rather, these alternative facts are based on two web pages from the AHA's website (Kramer Decl. Exhibits 1-2) that are not incorporated by reference in, or integral to, the complaint. *See* Section II(A), *infra*. They are also pure hearsay. *See* Section II(B), *infra*. Moreover, Defendant asks the Court to accept its unsubstantiated factual assertions as true. On a motion to dismiss, the Court is required to accept the allegations in the complaint as true and to construe all reasonable inferences in the light most favorable to the plaintiff. *See AmBase,* 326 F.3d at 72; *Fowlkes,* 432 F.3d at 95. To accept Defendant's invitation to treat its alternative facts as true, would turn this long-established standard on its head.

Nevertheless, even if the Court did accept Defendant's alternative facts as the undisputed truth, those proffered facts do not preclude a finding of fact that the Heart-Check Mark is a paid endorsement. Defendant argues that the Heart-Check Mark cannot be a paid endorsement because the AHA has minimum standards. The fact that an endorsing party has minimum standards for the products that it will endorse does not make the endorsement anything other than an endorsement. While the AHA may not want its name and mark appearing on just any food product (no matter how unhealthy), when it sells the right to use its name and mark on food products that meet its standards, that is a paid endorsement.

Defendant also repeatedly notes (based on the inadmissible hearsay exhibits) that the AHA retains a fee paid by food manufacturers that apply to use the Heart-Check Mark, even where the application is ultimately denied because a product does meet AHA standards. Even if true, such

a fact is of no moment.  Food manufacturers, regardless of whether their applications are

accepted, are not paying to see if their products meet AHA standards.  They are paying to get the

AHA name and mark on their products because that will increase their sales.[1]

Defendant's "factual" arguments ultimately devolve into meaningless semantics where

Defendant insists that the Heart-Check Mark program is a "certification process" and not a "paid

endorsement."  How Defendant or the AHA chooses to refer to the Heart-Check Mark program

is not dispositive of the true nature of the program.  Plaintiff plausibly alleges that the Heart-

Check Mark is a paid endorsement.  That is all that is required to survive a motion to dismiss.

Significantly, this is not the first time that a court has addressed the exact same arguments

raised by Defendant.  In *Ang v. Bimbo Bakeries USA, Inc*., 2013 WL 5407039, at *5-6 (N.D. Cal.

Sept. 25, 2013), plaintiffs asserted almost identical allegations regarding defendant Bimbo

Bakeries' use of the Heart-Check Mark on its products without disclosure that it is a paid

endorsement.  On a motion to dismiss, Bimbo Bakeries asked the court to consider materials

external to the complaint (including web pages from the AHA's website) that supposedly

supported Bimbo Bakeries' factual assertion that the Heart-Check Mark was not a paid

endorsement.  *Ang*, 2013 WL 5407039, at *5 ("Defendant argues plaintiffs have failed to plead

facts showing that the heart check is actually an 'endorsement made for compensation,' and

contends that it is not. To support its argument, defendant asks the Court to take judicial notice

of materials from the AHA's website explaining how and when heart check marks are used and

---

[1] Defendant's Exhibit 2 purports to be a list of the AHA's standards found on the AHA's
website, so food manufacturers should know if their products meet the AHA's standards before
applying for the right to place the Heart-Check Mark on its products.  *See* Kramer Decl.
Exhibit 2.  Of course, this Court is precluded from considering Defendant's exhibits.  *See* Section
II, *infra*.  Plaintiff merely points this out to demonstrate that nothing in Defendant's exhibits
(even if accepted as true) precludes a finding that the Heart-Check Mark is a paid endorsement.

what fees are paid to AHA for use of the mark.").  Bimbo Bakeries made the same arguments

that Defendant makes in the present case.

The *Ang* court rejected those arguments.  It refused to consider AHA web pages that were

external to the complaint (*id*. at *5-6) and, with respect to one AHA document of which plaintiff

did not object to the court taking judicial notice, the court held:

> [T]here is nothing in that document that undermines plaintiffs' allegations that use
> of the heart check mark is misleading and illegal. How the AHA heart check mark
> actually works (how it is approved for use by a manufacturer on a particular
> product and for what fee) and whether in light of those facts the mark can be
> considered an impermissible paid endorsement, either under the FDA guidance or
> the guidance issued by the Federal Trade Commission (and relied on by
> defendant) are not questions appropriate for resolution on this motion.

*Id*. at *6 (internal citation omitted).  The same is true of the exhibits that Defendant asks this

Court to consider.  Accordingly, there is no reason why this Court should rule any differently.

## II.   DEFENDANT CANNOT RELY ON MATERIALS
## EXTERNAL TO THE COMPLAINT ON A MOTION TO DISMISS.

### A.   Defendant's Exhibits Are Not Incorporated By Reference
### In The Complaint And Are Not Integral To The Complaint.

Defendant asks the Court to consider two exhibits that are external to the complaint.

Nothing in those exhibits undermines Plaintiff's allegations that the Heart-Check Mark is a paid

endorsement.  Nevertheless, this Court should not consider them.  Neither was incorporated by

reference in the complaint or integral to the complaint.

"On a motion to dismiss, the district court must limit itself to a consideration of the facts

alleged on the face of the complaint, and to any documents attached as exhibits or incorporated

by reference."  *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (internal citation omitted).

"[L]imited quotation does not constitute incorporation by reference." *Goldman v. Belden*, 754

F.2d 1059, 1066 (2d Cir. 1985)).  "[I]n some cases, a document not expressly incorporated by

reference in the complaint is nevertheless 'integral to the complaint" and may be considered. *Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016).  "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'"  *Id*. (quoting *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002)). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough.  *Id*. (quoting *Glob. Network Commun., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)).  *Accord, Sira v. Morton*, 380 F.3d 57, 67–68 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."); *Cosmas*, 886 F.2d at 13 ("short quotations from" external materials in complaint does not constitute an incorporation by reference).

"'In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.'" *Goel*, 820 F.3d at 559 (quoting *Glob. Network Commun*., 458 F.3d. at 157).  Plaintiff's allegations are not dependent on either exhibit and the complaint does not stand or fall on the exhibits.[2]

---

[2] In this respect, cases cited by Defendant are readily distinguishable.  In *Stewart v. Riviana Foods Inc*., 2017 WL 4045952, at *7 (S.D.N.Y. Sept. 11, 2017), the court considered the very product packaging that was alleged to be misleading in the complaint, but refused to consider other materials that were not incorporated by reference or integral to the complaint.  In *Intl. Audiotext Network, Inc. v. Am. Tel. and Tel. Co*., 62 F.3d 69, 72 (2d Cir. 1995), the court considered the very agreement on which plaintiff's claims were based.  In both *La Vigne v. Costco Wholesale Corp*., 284 F. Supp. 3d 496 (S.D.N.Y. 2018) and *DeLuca v. AccessIT Group, Inc*., 695 F. Supp. 2d 54, 60-61 (S.D.N.Y. 2010), the court refused to consider the external documents submitted by the defendants.

With respect to Exhibit 1, a web page from the AHA's website, Plaintiff quoted an excerpt in paragraph 29 of the complaint.[3]  There was no express incorporation by reference to the document.  That passing quote was also not integral to the complaint.  If paragraph 29 had been entirely omitted from the complaint, it would not alter the substance of Plaintiff's allegations – that Defendant misleads consumers by failing to disclose on its product labels that the Heart-Check Mark is a paid endorsement.  The quote was merely additional support for ancillary allegations regarding how food manufacturers benefit from the placement of the AHA mark on their products.  It has nothing to do with whether the Heart-Check Mark is a paid endorsement.[4]  Thus, Exhibit 1 is not sufficiently integral to the complaint for the Court to consider the document on a motion to dismiss.

In *Ang*, defendant asked the court to consider various AHA materials in support of its motion of dismiss, making arguments substantially similar to the ones raised by Defendant in this action.  *Ang*, 2013 WL 5407039, at *5.  Those arguments were rejected:

> Here, the Amended Complaint does not reference or rely on the AHA materials, including the two page brochure [which was quoted in the amended complaint], as a *basis* for their claim that use of the mark is illegal or misleading. They are not suing the AHA claiming AHA's promotional materials are misleading. Instead, the

---

[3] Paragraph 29 alleges:

> The AHA website states that: "When the Heart-Check mark is on the package, shoppers pay attention. Since 1995, the Heart-Check mark has guided shoppers to healthier choices, making it a leader with consumers and the food industry. Consumer research shows that shoppers are paying more attention to healthy eating, and their #1 health concern is heart health. The Heart-Check mark makes smart shopping easier and reassures shoppers they have made a choice that can fit into a heart-healthy diet. In fact, the American Heart Association is the authority most trusted by consumers to decide if a product may display a nutrition message or mark."

[4] Indeed, Defendant acknowledges the ancillary nature of the quote, stating in its papers that the quote is solely used to support the allegation that "food manufacturers 'eagerly pay the AHA for its endorsement because they know that the Heart-Check Mark will increase their sales and their profits.'"  Def. Mem. at 4 (quoting Complaint ¶ 24).

> AHA promotional materials are cited to support the ancillary allegations about how companies benefit by use of the mark and how the AHA believes customers respond to the mark.

*Id.* (emphasis in the original) (internal citations omitted).

Defendant's entitlement to have Exhibit 2 considered by the Court is more tenuous. Exhibit 2 is not referred to or quoted in the complaint and has absolutely no connection to the allegations in the complaint. To the extent Plaintiff quoted from a single web page (Exhibit 1) from the AHA's vast website,[5] Plaintiff has certainly not incorporated by reference every other web page on that website.[6] Accordingly, there is no basis on which the Court can consider Exhibit 2. *Accord*, *Ang*, 2013 WL 5407039, at *5-6 (denying defendant's request to take judicial notice of materials not incorporated into, or integral to, plaintiffs' complaint).

### B.      Defendant's Exhibits Are Not Admissible As Evidence.

Even if Defendant's exhibits were somehow integral to the complaint, "consideration of such material is only proper if it is clear on the record that no dispute exists regarding the authenticity or accuracy of the document and that there are no material disputed issues of fact regarding the material's relevance." *Samodovitz v. Cocchiola*, 2017 WL 1401310, at *4 n.3

---

[5] In its papers, Defendant states that, "[i]n his Complaint, Plaintiff relies upon selective *excerpts* from the AHA website." Def. Mem. at 4 (emphasis added). There is only one excerpt from the AHA website in Plaintiff's complaint. *See* Complaint ¶ 29.

[6] Even if Plaintiff did somehow incorporate by reference the entire AHA website as a singular document, Defendant cannot rely on Exhibit 2 -- a single cherry-picked web page from the AHA website -- as admissible evidence without providing the entire AHA website. *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time."); *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 111 (2d Cir. 2012) ("The law of evidence embodies a rule of completeness requiring generally that adversaries be allowed to prevent omissions that render matters in evidence misleading. With regard to writings, one cannot introduce only the favorable portion of a document without the adversary successfully demanding production of the entire writing.").

(N.D.N.Y. Apr. 19, 2017).  The accuracy of Defendant's exhibits is very much in question.  No evidence has been presented regarding the exhibits' accuracy and any such evidence is in the hands of a third-party (the AHA).  To that end, the exhibits are submitted to the Court as exhibits to the declaration of Defendant's counsel.  Counsel has no personal knowledge as to the truth of the statements in the exhibits, nor does he purport to have such knowledge.  *See* Kramer Decl. ¶¶ 1-3.  These documents are pure hearsay.  Fed. R. Evid. 802.  Under no circumstances can the Court consider Defendant's exhibits for the truth of their contents.  *Accord, Ang*, 2013 WL 5407039, at *6 ("[D]efendant is not simply asking the Court to take judicial notice of the AHA's website pages, but the truth of the contents of those pages.  That is inappropriate under Federal Rule of Evidence 201.").

Plaintiff also disputes the relevance of the exhibits to Plaintiff's central allegation that Defendant's product labels are misleading because they fail to disclose that the Heart-Check Mark is a paid endorsement.  The exhibits certainly do not dispositively resolve the issue.  The exhibits must also be read in the most favorable light to Plaintiff.  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012).  Ultimately, nothing in either exhibit precludes the allegations in Plaintiff's complaint as a matter of law.  The *Ang* court came to the same conclusion.  *See Ang*, 2013 WL 5407039, at *6 ("[T]here is nothing in that document that undermines plaintiffs' allegations that use of the heart check mark is misleading and illegal.").  Nothing in Defendant's exhibits suggests that, as a matter of law, the Heart-Check Mark is not a paid endorsement.  At most, Defendant's exhibits raise questions of fact that cannot be resolved on a motion to dismiss.

With respect to Exhibit 1, at most, it shows that there was a formal application process for the Heart-Check Mark.  Such an application process does not preclude the possibility that the

Heart-Check Mark is a paid endorsement.  Indeed, Exhibit 1 shows that the Heart-Check Mark program, at its core, is a licensing program pursuant to which food manufacturers pay for a license to use the AHA name and mark on their products.  *See* Kramer Decl. Exhibit 1 at ¶ 3, Step 5 (food manufacturers enter into a license agreement).  The fact that food manufacturers are paying to use the AHA's intellectual property on their products supports the conclusion that the Heart-Check Mark is a paid endorsement.

Exhibit 2 (which is not quoted or referenced anywhere in the complaint) shows that the AHA has minimum standards for its endorsement.  The fact that an endorsing party has minimum standards for products that it will endorse does make an endorsement anything other than an endorsement.  Exhibit 2 also states that the AHA receives compensation from food manufacturers that receive licenses to use the AHA name and mark.  *See* Kramer Decl. Exhibit 2 at 5.

Further, Defendant's papers quote the first two paragraphs on page 1 of Exhibit 2, followed by an ellipse, and immediately thereafter quote the last paragraph on page 5.  Def. Mem. at 6.  That last paragraph states that "[f]ood manufacturers participating in the program pay administrative fees to the American Heart Association to cover program operating expenses." Defendant asks the Court to accept this hearsay statement as true.  However, to the extent Defendant is implying that the Heart-Check Mark program is not profitable, that is disputed by Plaintiff and is contrary to allegations in the complaint.  *Cf.* Complaint ¶ 22 ("The AHA makes a significant profit off the sale of rights to use the Heart-Check Mark.").[7]  A court cannot accept

---

[7] Indeed, Exhibit 1 shows that the AHA receives more than just its costs.  It states that food manufacturers pay the same fees regardless of whether the AHA incurs any costs by conducting lab testing (which only "may be required if your product approaches the upper limits for fat, saturated fat, trans fat, cholesterol and/or sodium").  *See* Kramer Decl. Exhibit 1 at ¶ 3, Steps 3 and 4.  Moreover, nothing submitted by Defendant (whether admissible or otherwise) shows the full extent of the AHA's compensation, or whether the Heart-Check Mark program is profitable.

such disputed external documents as true on a motion to dismiss.  *See Glob. Network Commun.*, 458 F.3d at 156 (courts cannot rely on external materials "to make a finding of fact that *controverted* the plaintiff's own factual assertions set out in its complaint.") (emphasis in the original) (vacating decision of the district court).  For all these reasons, the Court should not consider either of Defendant's exhibits.

## III.   PLAINTIFF HAS PLAUSIBLY ALLEGED THAT DEFENDANT'S PRODUCT LABELS ARE MISLEADING.

Defendant erroneously argues that its product labels are not misleading *as a matter of law*.  "The standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct." *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010) (denying motion to dismiss GBL claims predicated on allegedly misleading product labels).  Only in "'rare situation[s]'" will a court determine at the pleadings stage that a label is not misleading as a matter of law.  *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *16 (S.D.N.Y. Aug. 12, 2016) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)) (denying motion to dismiss GBL claims predicated on allegedly misleading product labels). Rather, courts generally hold that whether a reasonable consumer would find a label to be misleading is an issue of fact that should not be resolved on a motion to dismiss.  *See, e.g., Petrosino v. Stearn's Products, Inc.*, 2018 WL 1614349, at *7 (S.D.N.Y. Mar. 30, 2018) (finding questions of fact as to whether product label is misleading); *Segedie v. Hain Celestial Group, Inc.*, 2015 WL 2168374, at *10-11 (S.D.N.Y. May 7, 2015) (same).[8]

---

[8] Defendant cites *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) in support of its argument, but that case is readily distinguishable.  There, claims were dismissed as facially implausible where the allegedly misleading advertisement at issue did not contain the misleading language alleged in the complaint.

Nevertheless, Defendant argues that its product labels are not misleading as a matter of law because they supposedly accurately reflect that the products meet the AHA's criteria for heart-healthy food. However, Plaintiff does not allege that the products labels are misleading because of any representation regarding whether the products meet the AHA's criteria. Rather, Plaintiff alleges that the product labels are misleading because they do not disclose that Defendant paid to have the AHA name and mark placed on the labels. It is this omission of material fact that makes the labels misleading.

The FDA agrees. The FDA has determined that such omissions of material fact can be misleading and that such omissions render a product misbranded and unlawful. *See Final Rule: Food Labeling; General Requirements for Health Claims for Food*, 58 Fed. Reg. 2478, 2485 (Jan. 6, 1993) ("[T]he agency recognizes that endorsements made for compensation by private organizations or individuals may be misleading to consumers.").[9] Where the agency charged with regulation of food labels has determined that labels with undisclosed paid endorsements can be misleading, and has explicitly barred such undisclosed paid endorsements for that reason (*see id*.), it cannot be held that, as matter of law, Defendant's product labels are not misleading.

Moreover, even if Defendant's labels are otherwise truthful, such truthfulness does not preclude claims under GBL §§ 349 and 350. A statement that is literally true may still be misleading to consumers. *See, e.g.*, *Merck Eprova AG v. ProThera, Inc*., 2010 WL 9098310, at

---

[9] *See also* 21 U.S.C. § 321(n) ("If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.").

*3 (S.D.N.Y. Oct. 20, 2010) (denying defendant's motion for summary judgment on plaintiff's GBL §§ 349 and 350 claims, holding that literally true statements on defendant's labels may be misleading to consumers).  Whether a reasonable consumer would be misled by Defendant's product labels involves factual issues that cannot resolved on a motion to dismiss.  *See Irvine v. Kate Spade and Co*., 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017) (denying motion to dismiss claims based on labels that allegedly implied that products were of a higher quality, but made no explicit representation to that effect).

*Ang* is on all fours with this conclusion.  In that case, the plaintiff made almost identical allegations that a reasonable consumer would be misled by the AHA Heart-Check Mark on product labels because of the failure to disclose that it is a paid endorsement.  Rejecting arguments substantially similar to those made by Defendant in the present case, the *Ang* court held that the plaintiff adequately alleged that a reasonable consumer would be misled by defendants' product labels.  *See Ang*, 2013 WL 5407039, at *4.  This Court should not rule any differently.  For all these reasons, Plaintiff has adequately alleged claims under GBL §§ 349 and 350.

## IV.   THE NEW YORK AGRICULTURE AND MARKETS LAW PROVIDES A PRIVATE CAUSE OF ACTION FOR CONSUMERS OF MISBRANDED FOOD PRODUCTS.

Plaintiff has plausibly alleged a violation of the New York Agriculture and Markets Law.  Without citation to any authority that supports its position, Defendant asserts that there is no private cause of action under this law.  In actuality, New York courts have long held that there is a private cause of action under the Agriculture and Markets Law for consumers against manufacturers of misbranded food products.  *See Abounader v. Strohmeyer & Arpe Co*., 154 N.E. 309, 310–11 (N.Y. 1926) (finding that "the statute confers a right of action upon an ultimate purchaser against the person who originally prepared for market and sold the containers with false labels or statements of their contents, even though there were intermediate dealers and no

privity between the last purchaser and the first vendor"); *see also Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 423-24 (S.D.N.Y. 2011) (denying motion to dismiss certain claims under the Agriculture and Markets Law).[10]   Moreover, while Defendant erroneously asserts that there is no private cause of action, Defendant does not dispute that Plaintiff has otherwise plausibly alleged a violation of the Agriculture and Markets Law.

## V.   **P**LAINTIFF **H**AS **P**LAUSIBLY **A**LLEGED **A C**LAIM **F**OR **U**NJUST **E**NRICHMENT.

Plaintiff's claim for unjust enrichment is not duplicative of his GBL claims.  At the pleadings stage, an unjust enrichment claim should not be deemed duplicative where it has different elements than other alleged claims.  *See Nuss v. Sabad*, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016) (holding that "the [defendants] have failed to demonstrate that no reasonable trier of fact could find unjust enrichment or constructive trust without establishing all the elements for one of [plaintiff's] claims sounding in law").  At this time, it cannot be conclusively determined that proof that would be insufficient to demonstrate a GBL violation would necessarily be insufficient to prove an unjust enrichment claim.  The elements of an unjust enrichment claim are distinct from the elements of claims for violations of GBL § 349 or § 350. *See McCracken v. Verisma Sys., Inc.*, 2017 WL 2080279, at *8 (W.D.N.Y. May 15, 2017). "Thus, a reasonable trier of fact could find the elements [for] unjust enrichment without establishing all the elements for Plaintiffs' NYGBL § 349 claim." *Id.* ("Therefore, the Court finds that Plaintiffs' claim for unjust enrichment is not duplicative of their NYGBL § 349 claim.").

To that end, Defendant's position is contrary to Rule 8(d), which, *inter alia*, provides

---

[10] The only case Defendant cites in support of its position, *Izquierdo v. Mondelez Intl., Inc.*, 2016 WL 6459832, at *3 (S.D.N.Y. Oct. 26, 2016), stands for the unremarkable proposition that claims may be brought under GBL § 349 that are predicated on violations of the Agriculture and Markets Law.  In *Izquierdo*, the plaintiff did not allege a separate claim under the Agriculture and Markets Law and the court did not hold that such a separate claim could not be alleged.

that, "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  *See Delgado v. Ocwen Loan Servicing, LLC*, 2017 WL 5201079, at \*15 (E.D.N.Y. Nov. 9, 2017) (denying motion to dismiss unjust enrichment claim because of "the liberal pleading standard of the Federal Rules of Civil Procedure described above, which expressly contemplates pleading in the alternative regardless of inconsistency") (citing Fed. R. Civ. P. 8(d)(3)).[11]  Accordingly, the unjust enrichment claim cannot be dismissed at the pleadings stage.

## VI.     PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF.[12]

General Business Law §§ 349 and 350 provide for injunctive relief to prevent consumers from being harmed by deceptive business practices.  As a federal court sitting in diversity, this Court must apply New York State law that explicitly provides the remedy of injunctive relief. To the extent Defendant asserts that Plaintiff lacks standing to seek injunctive relief, it would undermine the entire purpose of these laws:

> To hold [that plaintiff lacks Article III standing] would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated. The only way a consumer could enjoin deceptive conduct would be if he were made aware of the situation by suffering injury. But once the consumer learned of the deception, he would voluntarily abstain from buying and therefore could no longer seek an injunction.

> An injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf.

---

[11] Defendant does not dispute that Plaintiff has alleged all elements of an unjust enrichment claim.

[12] Defendant seeks to dismiss Plaintiff's claims for injunctive relief based on lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).  "A complaint will be dismissed under Rule 12(b)(1) when the court has no subject matter jurisdiction over the action."  *Stanley v. Community Bank, N.A.*, 2009 WL 261333, at \*2 (N.D.N.Y. Feb. 4, 2009) (Sharpe, J.).  "In determining whether jurisdiction exists, the court 'must accept as true all material factual allegations in the complaint, but [it will] not . . . draw inferences from the complaint favorable to plaintiffs.'"  *Id*. (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).

*Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015).

Here, Defendant's alleged deceptive and misleading conduct is ongoing. The fact that Plaintiff is now aware of the deceptive and misleading nature of that conduct does not alter the ongoing harm to the consuming public. "This is the harm New York's . . . consumer protection statutes are designed to redress." *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013).

Courts within the Second Circuit have repeatedly held that named plaintiffs in class actions may seek injunctive relief, even if those named plaintiffs are currently aware of the deceptive nature of the product at issue. *See Petrosino v. Stearn's Products, Inc.*, 2018 WL 1614349, at *5 (S.D.N.Y. Mar. 30, 2018) ("[A] Plaintiff in a consumer protection suit has standing to seek injunctive relief regardless of any promises to purchase the products in questions in the future."); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 500 (E.D.N.Y. 2017) ("Because defendant continues to sell a version of the 'flushable' wipes almost identical in construction and effect to the ones purchased by plaintiff, injunctive relief is appropriate."); *Goldemberg v. Johnson & Johnson Consumer Co., Inc.*, 317 F.R.D. 374, 397 (S.D.N.Y. Oct. 4, 2016) (certifying injunctive relief class); *Belfiore*, 94 F. Supp. 3d at 445 ("Public policy, as well as precedent, supports the rule that Article III standing exists to seek injunctive relief."); *Ackerman*, 2013 WL 7044866, at *15 n.23 ("To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.,* 2012 WL 6217635, at *6 (N.D. Cal. Dec.13, 2012)); *see also Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) ("Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would 'eviscerate the intent of'" consumer protection statutes.) (quoting *Larsen v.*

*Trader Joe's Co.,* 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012)).  Absent injunctive relief, regardless of the outcome of this action, Defendant will remain free to continue its deceptive and misleading practices.

## CONCLUSION

For all the aforementioned reasons, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety and grant such other relief as the Court deems just and proper.

Dated:  White Plains, New York
   June 15, 2018

         */s/ Bradley F. Silverman*
         Todd S. Garber (Bar Number: 519821)
         D. Greg Blankinship (Bar Number: 519819)
         Bradley F. Silverman (Bar Number: 700185)
         **FINKELSTEIN, BLANKINSHIP,**
         **FREI-PEARSON & GARBER, LLP**
         455 Hamilton Avenue, Suite 605
         White Plains, New York 10601
         Tel: (914) 298-3281
         Fax: (914) 908-6709
         tgarber@fbfglaw.com
         gblankinship@fbfglaw.com
         bsilverman@fbfglaw.com

         *Attorneys for Plaintiff*