UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

**ABRAHAM JACOB WARNER,**
individually and on behalf of all
others similarly situated**,**

              **Plaintiffs,**

              v.

**STARKIST CO.,**

              **Defendant.**

1:18-cv-406
(GLS/ATB)

_____

## SUMMARY ORDER

Plaintiff Abraham Jacob Warner brings this diversity-based putative class-action for deceptive practices,[1] false advertising,[2] dealing in misbranded food,[3] and unjust enrichment, under New York law, based on defendant StarKist Co.'s use of a "Heart-Check Mark" on certain seafood products without disclosing that the mark is a paid endorsement by the American Heart Association (AHA). (Compl., Dkt. No. 1 ¶¶ 4-5, 17-30, 69-117.) Pending is StarKist's motion to dismiss, (Dkt. No. 10), which is

---

[1] *See* N.Y. Gen. Bus. § 349.

[2] *See* Gen. Bus. § 350.

[3] *See* N.Y. Agric. & Mkts. §§ 198-214-O.

granted in part and denied in part as follows.

1. **<u>Deceptive Practices and False Advertising Claims</u>**

   [N.Y. Gen. Bus. (GBL) §] 349 prohibits [d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. [GBL §] 350 prohibits [f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state. To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.

*Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (2012)) (internal quotation marks omitted). To determine whether a defendant's conduct is "materially misleading," New York has adopted an objective test that considers "whether representations or omissions [are] likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). "Such a test . . . may be determined as a matter of law or fact (as individual cases require)[.]" *Id.*

Here, the specific portion of StarKist's disputed label depicts a white check-mark in the center of a red heart and is accompanied by the

2

following statement: "American Heart Association – CERTIFIED – Meets Criteria For Heart-Healthy Food." (Dkt. No. 10, Attach. 4 at 8; Compl. ¶ 51.[4]) StarKist argues that placement of the Heart-Check Mark on its products is not materially misleading because the information it conveys is accurate. (Dkt. No. 10, Attach. 4 at 7-9.) However, as Warner points out, (Dkt. No. 17 at 16), the complaint also alleges that the labeling is misleading because StarKist does not disclose that it paid the AHA to place the mark on its products.[5] (Compl. ¶¶ 19, 32.) Contrary to StarKist's

---

[4] The complaint includes a blurry picture of the label at issue that is hard to make out. (Compl. ¶ 51.) However, the court presumes that this is the text in light of StarKist's assertion, (Dkt. No. 10, Attach. 4 at 8), and Warner's lack of objection, (*see generally* Dkt. No. 17).

[5] In his response, Warner asserts that

> [he] does not allege that the products [sic] labels are misleading because of any representation regarding whether the products meet the AHA's criteria. Rather, [he] alleges that the product labels are misleading because they do not disclose that [StarKist] paid to have the AHA name and mark placed on the labels. It is this omission of material fact that makes the labels misleading.

(Dkt. No. 17 at 16.) In light of Warner's concession, and his failure to respond to StarKist's relevant arguments, the court deems all claims based on allegations that StarKist deceived consumers into believing that its products with the Health-Check Mark label were healthier than other products, (Compl. ¶¶ 47, 54, 73, 86, 103), abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn

3

argument that "[Warner] fails to state factual allegations sufficient to support his conclusory claim that the AHA's Heart-Check Mark is a 'paid endorsement,'" (Dkt. No. 10, Attach. 4 at 7), the complaint adequately alleges that StarKist pays an annual fee to use the Heart-Check Mark but omits this fact from its labels. (Compl. ¶¶ 17-18, 20.) At this stage, the court declines to take judicial notice of the entire AHA website, as urged by StarKist in an attempt to rebut these allegations, (Dkt. No. 10, Attach. 4 at 3-7), given that Warner only references one passage of the website that is largely irrelevant to his underlying claims, (Compl. ¶ 29). *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.") (internal citation omitted). Moreover, as evidenced by the parties' papers, (Dkt. No. 10, Attach. 4 at 4-7; Dkt. No. 17 at 12-15), the court may not properly consider the website because its accuracy and relevance are in dispute. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

---

from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended.").

Accordingly—considering StarKist's failure to argue that the omission of language indicating it paid to place the Heart Check-Mark on its products would not mislead a reasonable consumer—Warner has adequately alleged that StarKist's omission was materially misleading at this stage.[6] *See Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *7 (S.D.N.Y. March 30, 2018) (holding questions of fact over whether product labeling was materially misleading were not resolvable on a motion to dismiss); *Segedie v. Hain Celestial Grp.*, No. 14–cv–5029, 2015 WL 2168374, at *10-11 (S.D.N.Y. May 7, 2015) ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss.") (internal quotation marks and citation omitted); *see also Ang v. Bimbo Bakeries USA, Inc.*, Case No. 13–cv–1196, 2013 WL 5407039, at *1, *4,

---

[6] In its reply papers, StarKist suggests, for the first time, that the GBL is preempted by federal law. (Dkt. No. 18 at 5-6.) However, the court does not consider arguments raised for the first time in reply papers. *See Keefe v. Shalala*, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995). Nonetheless, if this is actually StarKist's position—as opposed to a last ditch effort to throw something at the wall and see if it sticks—they should fully address the issue in their next go-around. Furthermore, because the court does not consider any new arguments raised in Starkist's reply, Warner has no basis for seeking leave to file a surreply. (Dkt. No. 19.) As such, that motion is denied.

*5-6 (N.D. Cal. Sept. 25, 2013) (considering manufacturer's use of the Heart-Check Mark and determining, under similar state law standard, that whether the mark can be considered an impermissible paid endorsement could not be decided on a motion to dismiss). As such, this portion of StarKist's motion is denied. However, the court notes that this is a close call, which could be revisited at the summary judgment stage.

**2.     Agriculture and Markets Law Claim**

Next, StarKist alleges that Warner cannot sustain a claim under the Agriculture and Markets Law (AML) because the statute does not provide for a stand-alone private remedy. (Dkt. No. 10, Attach. 4 at 9.) However, the lone case that StarKist cites does not support this proposition. (*Id.* (citing *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-4697, 2016 WL 6459832, at *3 (S.D.N.Y. Oct. 26, 2016)).) Moreover, Warner points to a decision from the New York Court of Appeals, which seems to indicate that the AML was designed to provide a stand-alone private remedy to consumers. (Dkt. No. 17 at 17-18); *see Abounader v. Strohmeyer & Arpe Co.*, 243 N.Y. 458, 463 (1926) (finding "the statute confers a right of action upon an ultimate purchaser against the person who originally prepared for market and sold the containers with false labels or statements of their contents" and "no one

doubts that the statute by express provision might give to an ultimate purchaser of falsely labeled containers however remote a right of action against the person who violated the statute by marketing them with false labels"). StarKist does not argue that this decision is inapposite but merely suggests that the court should not follow it because it is old. (Dkt. No. 18 at 7.) However, case law does not expire solely with the passage of time. *See Auerbach v. Rettaliata*, 765 F.2d 350, 352 (2d Cir. 1985) ("The interpretation of a state statute . . . made by that state's highest court is binding on a federal court.") (internal citation omitted). As such, StarKist fails to convince the court that Warner's AML claim should be dismissed at this stage, and this portion of its motion is denied.

### 3. **Unjust Enrichment**

Additionally, StarKist argues that Warner's unjust enrichment claim must be dismissed because it is duplicative of his GBL claims. (Dkt. No. 10, Attach. 4 at 9-10.) To be sure,

> [u]njust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled. An unjust

enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790-91 (2012) (internal citations omitted). However, StarKist fails to persuade the court that this claim should be dismissed at this stage.

The elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350. *See McCracken v. Verisma Sys., Inc.*, No. 6:14-cv-6248, 2017 WL 2080279, at *8 (W.D.N.Y. May 15, 2017). And StarKist does not argue that Warner fails to plausibly allege facts that could support an unjust enrichment claim. (*See generally* Dkt. No. 10, Attach. 4.) Thus, "a 'reasonable trier of fact could find unjust enrichment . . . without establishing all the elements for one of [plaintiff's other] claims sounding in law.'" *McCracken*, 2017 WL 2080279, at *8 (quoting *Nuss v. Sabad*, 7:10-CV-279, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016)); *see also Delgado v. Ocwen Loan Servicing, LLC*, 13-CV-4427, 2017 WL 5201079, at *15 (E.D.N.Y. Nov. 9, 2017) (denying motion to dismiss unjust enrichment claim in light of "the liberal pleading standard of the Federal Rules of Civil Procedure" that "expressly contemplates pleading in the alternative"). Accordingly, in an abundance of caution, this

8

portion of StarKist's motion is also denied.

## 4. <u>**Standing to Seek Injunctive Relief**</u>

Lastly, StarKist moves to dismiss Warner's claims to the extent that they seek injunctive relief, pursuant to Fed. R. Civ. P. 12(b)(1). (Dkt. No. 10, Attach. 4 at 10-12.) StarKist argues that Warner does not have Article III standing to seek injunctive relief because he does not allege a future injury. (*Id.*) Because Warner is now aware of StarKist's allegedly misleading label, StarKist argues that there is no danger that he will be misled in the future. (*Id.* at 12.)

There seems to be a split of authority within the Second Circuit regarding whether a plaintiff seeking injunctive relief in the consumer protection context must allege a future injury. Warner relies on cases supporting the notion that plaintiffs alleging that a product's labeling is misleading have standing to seek injunctive relief, even in the absence of future injury, because to hold otherwise would undermine state consumer protection laws. (Dkt. No. 17 at 19-21); *see, e.g.*, *Petrosino*, 2018 WL 1614349, at *5; *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015). On the other hand, StarKist points to authority holding that plaintiffs claiming that they were misled by a manufacturer lack

9

standing to seek injunctive relief where allegations demonstrate that they are unlikely to purchase the product again. (Dkt. No. 10, Attach. 4 at 10-12); *see, e.g.*, *Alce v. Wise Foods, Inc.*, 17 Civ. 2402, 2018 WL 1737750, at *6 (S.D.N.Y. Mar. 27, 2018); *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 416-18 (S.D.N.Y. Oct. 21, 2015); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 255-56 (E.D.N.Y. 2014). The Second Circuit appears to favor the latter line of cases. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)[7] (holding plaintiff failed to establish likelihood of future injury where he failed to allege he intended to buy product at issue from defendant in the future, and defendant no longer sold product). Additionally, the latter line of cases more closely aligns with established standing principles.

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const., art. III, § 2. As such, it is well settled that the "irreducible constitutional minimum of standing" requires a plaintiff to allege (1) injury in fact, which is concrete and particularized, and

---

[7] Despite Warner's assertion that StarKist's cite to supplemental authority in its reply somehow constitutes a new argument, (Dkt. No. 19), this decision, which merely supports StarKist's original arguments for dismissal, is properly considered.

actual or imminent; (2) a causal connection between said injury and defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 564 (1992). A plaintiff seeking injunctive relief must allege "a real and immediate threat of future injury." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks and citation omitted).

Warner alleges that he "regularly purchases" StarKist products, "including as late as early-February 2018," (Compl. ¶ 52), "was unaware that StarKist paid the AHA to place the Heart-Check Mark on its labels," (*id.* ¶ 55), and had he known the Heart-Check Mark was a paid endorsement, "he would not have purchased the product or . . . paid as much for the product," (*id.* ¶ 57). Warner does not expressly allege that he is at risk of future injury. (*See generally id.*) Moreover, Warner is now aware that StarKist pays the AHA to place the Heart-Check Mark on its labels. (*Id.* ¶¶ 17-18.) As such, there is no "real and immediate" threat of future injury

11

because Warner's own allegations indicate that he will not purchase or pay as much for the product going forward.  *See Nicosia*, 834 F.3d at 239; *Shain*, 356 F.3d at 215.

To the extent that Warner argues that "[t]he fact that [he] is now aware of the deceptive and misleading nature of [StarKist's] conduct does not alter the ongoing harm to the consuming public," (Dkt. No. 17 at 20), it should be noted that, "the fact that unknowing class members might purchase [a manufacturer's] products based on the [manufacturer's] allegedly unlawful advertising does not establish standing."  *Tomasino*, 44 F. Supp. 3d at 256 (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) ("[T]he named class plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.")) (other internal citation omitted); *Dodge v. County of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004) ("[T]he named plaintiffs . . . must themselves have standing to seek injunctive relief."); *Albert*, 151 F. Supp. 3d at 418 ("Plaintiffs do not have standing to seek injunctive relief because they have not alleged that they will purchase

[d]efendants' . . . products in the future.  Because they do not have individual standing, they also do not have standing on behalf of [the] putative New York . . . class[]."); *see also Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) ("Standing cannot be acquired through the back door of a class action.") (internal citations omitted).  As such, Warner does not have standing to seek injunctive relief, and this portion of StarKist's motion is granted.

Accordingly, for the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to dismiss (Dkt. No. 10) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to plaintiff's claims seeking injunctive relief; and;

**DENIED** in all other respects; and it is further

**ORDERED** that plaintiff's claims seeking injunctive relief are **DISMISSED**; and it is further

**ORDERED** that defendant shall file an appropriate responsive pleading within the time allotted by the Rules; and it is further

**ORDERED** that plaintiff's motion for leave to file a surreply (Dkt. No. 19) is **DENIED**; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter to schedule further proceedings in accordance with this Summary Order; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

March 25, 2019
Albany, New York

*/s/ Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge